DEBORAH M. SMITH
Acting United States Attorney

ROBERT S. ANDERSON
Senior Trial Attorney
Environment and Natural Resources Division
United States Department of Justice
Phone: (406) 829-3322
Fax: (406) 542-1476
Email: robert.anderson8@usdoj.gov

STEVEN E. SKROCKI
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | COUNT 1: |
| | ) | CONSPIRACY |
| | ) | Vio. 18 U.S.C. § 371; 18 |
| vs. | ) | U.S.C. § 2 |
| | ) | |
| ALAN J. VEYS and | ) | COUNTS 2-5: |
| JAMES E. JAIRELL, | ) | WILDLIFE TRAFFICKING |
| | ) | Vio. 16 U.S.C. §§ 3372(a)(2)(A), |
| Defendants. | ) | 3373(d)(1)(B); 18 U.S.C. § 2 |
| | ) | |
| | ) | |
| | ) | |



)    COUNTS 6-13:
)    FALSE STATEMENT
)    CONCERNING WILDLIFE
)       Vio. 16 U.S.C. §§ 3372(d)(2),
)    3373(d)(3)(A)(ii); 18 U.S.C. § 2
)
)    COUNT 14:
)    FORFEITURE ALLEGATION
)       16 U.S.C. § 3374(a)(2)
)

## I N D I C T M E N T

### INTRODUCTORY ALLEGATIONS

The following statements were true at all time relevant to this Indictment:

1. ALAN J. VEYS (hereinafter "VEYS") was the operator of the Pybus Point Lodge, located on Admiralty Island in southeast Alaska.

2. JAMES E. JAIRELL (hereinafter "JAIRELL") resided in Wyoming and guided big game hunters in Alaska.

Relevant Alaska Laws and Regulations:

3. The State of Alaska recognizes and licenses certain distinct categories of big game guides, including the "assistant guide," the "class-A assistant guide" and the "registered guide."

4. The registered guide who contracts to guide or outfit a big-game hunt is required to plan, direct and monitor the big game hunting services provided to the client. 12 AAC 75.240(a). The registered guide who contracts for the hunt must be physically

2

present in the field with the client at least once during the contracted hunt. AS
08.54.610(e)(1), 12 AAC 75.250(a).

5. Neither a class-A assistant guide nor an assistant guide may contract to guide a
big-game hunt. AS 08.54.720(a)(14); AS 08.54.620(b)(1), 630(b)(1). A class-A
assistant guide or assistant guide shall be employed by, and under the supervision of, a
registered guide who has contracted with the client for whom the class-A assistant guide
or assistant guide is conducting the hunt. AS 08.54.620(b)(2), 630(b)(2). It is unlawful
in Alaska for a class-A assistant guide or an assistant guide to knowingly guide a hunt
except while employed and supervised by a registered guide. AS 08.54.720(a)(3).

6. "Guide" means to provide, for compensation or with the intent or with an
agreement to receive compensation, services, equipment, or facilities to a big game
hunter in the field by a person who accompanies or is present with the big game hunter
in the field either personally or through an assistant. AS 08.54.790(7). Such services
include:

        (A)    contracting to guide or outfit big game hunts;

        (B)    stalking, pursuing, tracking, killing or attempting to kill big
              game;

        (C)    packing, preparing, salvaging or caring for meat, except that
              which is required to properly and safely load the meat on the
              mode of transportation being used by a transporter;

        (D)    field preparation of trophies, including skinning and caping;

        (E)    selling, leasing, or renting goods when the transaction occurs
              in the field;

        (F)    using guiding or outfitting equipment, including spotting
              scopes and firearms, for the benefit of a hunter; and

        (G)    providing camping or hunting equipment or supplies which

3

are already located in the field.

7. "Outfit" means to provide, for compensation or with the intent to receive compensation, services, supplies, or facilities to a big game hunter in the field, by a person who neither accompanies nor is present with the big game hunter in the field either personally or by an assistant. AS 08.54.790(8).

8. It is the responsibility of the registered guide, class-A assistant guide and assistant guide to, among other things:

> -ensure that the appropriate tags are attached to any game taken by a client and all game is sealed or marked as required by 5 AAC 92. 12 AAC 75.310(a)(1);
>
> -advise clients and employees involved in a hunt of all applicable state and federal statutes and regulations related to hunting, land use, wildlife, big game hunting services, and conservation. 12 AAC 75.310(a)(8);

9. The State of Alaska "Transporter License" authorizes non-guides to provide transportation services and accommodations to big game hunters in the field at a permanent lodge, house or cabin owned by the transporter. AS 08.54.650. A licensed transporter (unless the transporter is also a guide) may not provide big game hunting services, and the transporter must submit an annual Transporter Activity Report to the state which describes the details of transportation services provided under the license. AS 08.54.650.

4

10. "Big Game Hunting Services" means a service for which the provider of the service must obtain a registered guide, class-A assistant guide, or assistant guide license; "big game hunting services" includes guiding services and outfitting services. AS 08.54.790(2).

11. The skin and skull of a black bear taken in Alaska Game Management Units encompassing Admiralty Island, Kupreanof Island and Kuiu Island must be presented to a representative of the Alaska Department of Fish and Game for sealing within a specified time after the animal is killed. 5 AAC 92.165. A person who kills a bear in a Management Unit where sealing is required, but is unable to present the skin and skull in person, must complete and sign a temporary sealing certificate and ensure that the completed temporary sealing certificate, along with the bear skin and skull, are presented to a representative of the Alaska Department of Fish and Game within 30 days after the taking. 5 AAC 92.165(d). A person may not falsify any information required on the sealing certificate or temporary sealing certificate provided by the department. 5 AAC 92.165(f).

## COUNT 1

### CONSPIRACY TO VIOLATE THE LACEY ACT
Vio. 18 U.S.C. §§ 371, 2

The Grand Jury Charges that:

Beginning on or about February 1, 2000  and continuing up to and until the date of this Indictment, in the District of Alaska, ALAN J. VEYS ("VEYS"), and JAMES E.

5

JAIRELL ("JAIRELL") did knowingly combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury, to commit acts in violation of the laws of the United States, namely:

Objective Number One:  To knowingly engage in conduct involving the sale of wildlife having a market value exceeding $350, to wit: black bears, by placing the trophy parts of the bears into the stream of interstate commerce between Alaska and other states, having sold and provided guiding and outfitting services for the taking of the bears by non-resident clients/hunters without being licensed to sell or provide such services, in violation of Alaska state laws and regulations, knowing the sale and provision of such services were unlawful.  Such conduct is prohibited by the Lacey Act, at Title 16, United States Code, Sections 3372(a)(2)(A) and 3373(d)(1)(B).

Objective Number Two:  To knowingly make and submit false records, accounts and identification of wildlife having a market value in excess of $350, to wit: black bears which the defendants sold and transported in interstate commerce, by making and causing to be made Alaska black bear sealing certificates for the bears which falsely reported the bears had been killed during non-guided hunts when in fact the bears had been killed during guided hunts illegally contracted for by VEYS and guided by JAIRELL.  Such conduct is prohibited by the Lacey Act, at Title 16, United States Code, Sections 3372(d)(2), 3373(d)(3)(A)(ii).

6

## I. THE MEANS AND METHODS USED BY THE CONSPIRATORS TO ACHIEVE THE OBJECTIVES OF THE CONSPIRACY

In order to achieve the objectives of the conspiracy:

1. JAIRELL would fraudulently obtain Alaska guide licenses, assisted by VEYS and others;

2. While representing the Pybus Point Lodge at sports shows, VEYS and JAIRELL would contract for black bear hunts with clients to be guided by JAIRELL out of the Pybus Point Lodge.

3. JAIRELL would guide clients on black bear hunts out of the Pybus Point Lodge without the required involvement of a registered guide.

4. VEYS would accept payment for these guided hunts and later distribute a share of the money to JAIRELL.

5. JAIRELL and VEYS would make and submit, or cause to be made and submitted to the State of Alaska, black bear sealing certificates which falsely reported that the bears killed on hunts guided by JAIRELL without the required involvement of a registered guide were killed on non-guided hunts.

## II. OVERT ACTS

In furtherance of the conspiracy, and in order to effect its objectives, VEYS, JAIRELL and others known and unknown to the Grand Jury, committed, or caused to be committed, the following overt acts in the District of Alaska and elsewhere.

7

1. Beginning in or about February 2000, VEYS attended various sports shows in Nevada and elsewhere and, while promoting the services offered at Pybus Point Lodge, contracted with several clients for multi–day bear-hunting trips in Alaska to occur during the Spring of 2000, during which the clients would stay at the Pybus Point Lodge and be guided by JAIRELL.

2. On or about April 20, 2000, JAIRELL submitted a class-A assistant guide application to the State of Alaska which contained false information regarding his residency status and Alaska hunting experience.

3. On or about April 20, 2000, VEYS signed a "Hunting Experience and Residency Affidavit" in support of JAIRELL's class-A assistant guide license application, which contained false information regarding JAIRELL's residency status and Alaska hunting experience.

4. On or about April 21, 2000, JAIRELL obtained a class-A assistant guide license from the State of Alaska on the basis of false Hunting Experience and Residency affidavits signed by VEYS and others.

5. On or about April 20, 2000, VEYS, d/b/a Pybus Point Lodge, applied for a transporter license from the State of Alaska, which

was issued to Pybus Point Lodge on April 22, 2000 and remained valid through December 31, 2001.

6.    On or about April 20, 2000, JAIRELL applied for and obtained a resident Alaska hunting license by falsely representing that he had lived in Alaska for one year and two months.

7.    On or about June 3, 2000, VEYS offered three fishing clients at the Pybus Point Lodge the opportunity to hunt black bears while guided by JAIRELL.

8.    On or about June 3, 2000, without the required involvement of a registered guide, JAIRELL contracted to guide the three fishing clients on a two-day black bear hunt for $1,500 each.

9.    On or about June 4, 2000, JAIRELL, in exchange for $1,500 each, guided the three fishing clients on black bear hunts, without the required involvement of a registered guide, during which two bears were killed, and assisted in the transport of the bear hides and skulls from Alaska to Wisconsin.

10.    VEYS did not file a Transporter Activity Report with the State of Alaska at any time for the year 2000.

11.    On or about January 15, 2001, VEYS attended a sports show in Reno, Nevada, where he contracted with two Washington clients for

9

a trip during which the clients would stay at the Pybus Point Lodge in spring 2001 and one of the clients would be charged $1,500 to be taken on a guided black bear hunting trip. On or about the same date, VEYS accepted a $1,000 deposit and later accepted all client payments, except tips, for this trip.

12.    On or about February 8, 2001, VEYS and JAIRELL attended a sports show and contracted with a Georgia client for a combination fishing/black bear hunting trip in Alaska in 2001 for the price of approximately $4,000, during which the client would be guided by JAIRELL. VEYS charged the Georgia client approximately $2,595 for each additional family member who would stay at the Lodge, fish and not hunt. On or about the same dates, VEYS accepted a $6,000 deposit from the client and later accepted all client payments, except tips, for this trip.

13.    On or about February 9, 2001, VEYS attended a sports show in Salt Lake City, Utah, where he contracted with three Utah clients for a combination fishing/black bear hunting trip at the Pybus Point Lodge in Alaska in 2001, for the price of approximately $4,495 each. VEYS accepted all client payments, except tips, for this trip.

14.    On or about February 10, 2001, VEYS and JAIRELL attended a

10

sports show in Salt Lake City, Utah, where he contracted with two additional Utah clients for a combination fishing/black bear hunting trip in Alaska in 2001, during which the clients would stay at the Pybus Point Lodge and be charged approximately $2,000 for the guided bear hunting portion of the trip. VEYS accepted all client payments, excluding tips, for this fishing/hunting trip.

15.   On or about and between May 31, 2001 and June 7, 2001, at the Pybus Point Lodge, JAIRELL met with the two Utah residents  and guided them on black bear hunts using Pybus Point Lodge facilities, Lodge boat and Lodge boat captain. On two separate hunts over a two-day period, JAIRELL directed the Lodge boat to Kake, acquired a vehicle, drove the hunters in areas he chose on Kupreanof Island looking for bears, advised the hunters whether or not to shoot a particular bear, skinned and deheaded the bears each hunter shot,  transported the bear skins and skulls from the kill sites to Pybus Point Lodge, where he removed the skulls, fleshed the skulls and hides, salted the hides, advised the hunters about what information to write on temporary bear sealing certificates, filling in some parts of the certificates himself and later transported, or arranged the transport, of  the bear skins and skulls for sealing and

11

shipment from Alaska to Utah. No registered guide was involved in the hunts of these two Utah clients.

16.    On or about June 7, 2001, JAIRELL made and submitted, or caused to be made and submitted, to the State of Alaska, temporary black bear sealing certificates which falsely reported that the two bears killed by the Utah hunters were killed on non-guided hunts.

17.    On or about and between June 5, 2001 and June 8, 2001 at the Pybus Point Lode, JAIRELL met with the Georgia client and his son and  guided them on black bear hunts using Pybus Point Lodge facilities, Lodge boat and Lodge boat captain. On three hunts over a three-day period, JAIRELL directed the Lodge boat to Kake, acquired a vehicle, drove the hunters in areas he chose on Kupreanof Island looking for bears, advised the hunters whether or not to shoot a particular bear, skinned, deheaded and partially butchered the bear shot by the elder hunter, transported the bear skin and skulls from elder hunter's bear, and whole bear shot by the younger hunter, from the kill sites to Pybus Point Lodge, where he removed the skulls, fleshed the skulls and hides, salted the hides, advised the hunters about what information to write on temporary bear sealing certificates, filling in some parts of the certificates

12

himself, and later transported, or arranged the transport, of the bear skins and skulls for sealing and shipment from Alaska to Georgia. No registered guide was involved in the hunts of these two Georgia clients.

18. On or about June 7, 2001 and June 21, 2001, JAIRELL made and submitted, or caused to be made and submitted, to the State of Alaska, black bear sealing certificates falsely reporting that the black bears killed by the Georgia clients were killed on non-guided hunts.

19. On or about June 21, 2001, VEYS and JAIRELL transported the Georgia clients' bear hides and skulls from Alaska to Georgia.

20. On or about and between September 3 and 4, 2001, at Pybus Point Lodge, JAIRELL met with three other Utah residents and guided them on black bear hunts using Pybus Point Lodge facilities, a 27-foot Koffler boat bearing Alaska Department of Fish and Game number 68500 owned by the Lodge and operated by a Lodge employee. On September 3, 2001, JAIRELL directed the boat to Kake, acquired a vehicle, drove the hunters in areas he chose on Kupreanof Island looking for bears, advised the hunters whether or not to shoot a particular bear, skinned and deheaded the bears killed

13

by two of the hunters, and transported the bear skins and skulls from

the kill sites to Pybus Point Lodge, where he removed the skulls,

fleshed the skulls and hides, salted the hides, advised the hunters

about what information to write on temporary bear sealing

certificates, filling in some parts of the certificates himself, and later

transported, or arranged the transport, of the bear skins and skulls

for sealing and shipment from Alaska to Utah.  On September 4,

2001, JAIRELL directed the Koffler boat described above to

Kupreanof Island, guided the hunter to a logging road, located a

black bear for the hunter to shoot, skinned and deheaded the bear

killed by the hunter, and transported the bear skin and skull from the

kill site to Pybus Point Lodge, where he removed the skull, fleshed

the skull and hide, salted the hide, advised the hunter about what

information to write on a temporary bear sealing certificate, filling

in some parts of the certificate himself, and later transported, or

arranged the transport, of the bear skin and skull for sealing and

shipment from Alaska to Utah   No registered guide was involved in

the hunts of these three Utah clients.

21.    On or about September 26, 2001, JAIRELL made and submitted, or

caused to be made and submitted, to the State of Alaska,  sealing

14

certificates falsely reporting that the black bears killed by the Utah

hunters were killed on non-guided hunts.

22.     On or about September 26, 2001, VEYS and JAIRELL transported,

or caused to be transported, the Utah clients' bear hides and skulls

from Alaska to Utah.

23.     On or about and between September 4-6, 2001, at Pybus Point

Lodge, JAIRELL met with the Washington client and guided her on

black bear hunts using Pybus Point Lodge facilities, and a Lodge-

owned 27-foot Koffler boat bearing Alaska Department of Fish and

Game number 68500 operated by a Lodge employee. On

September 5, JAIRELL directed the boat to Kake, acquired a

vehicle, drove the hunter in areas he chose on Kupreanof Island

looking for bears, but did not find any. On September 6, 2001,

JAIRELL again directed the Koffler boat described herein to Kake,

acquired a vehicle, drove the hunter in areas he chose on Kupreanof

Island looking for bears, advised her whether or not to shoot a

particular bear, skinned and deheaded the bear killed by the  hunter,

and transported the bear skin and skull from the kill site to Pybus

Point Lodge, where he removed the skull, fleshed the skull and

hide, salted the hide, advised the hunter about what information to

15

write on a temporary bear sealing certificate, filling in some parts of the certificate himself, and later transported, or arranged the transport, of the bear skin and skull for sealing and shipment from Alaska to Washington.

24. On or about September 26, 2001, JAIRELL made and submitted, or caused to be made and submitted, to the State of Alaska, a sealing form which falsely reported that the black bear killed by the Washington hunter was killed on a non-guided hunt.

25. On or about September 26, 2001 VEYS and JAIRELL transported, or caused to be transported, the Washington client's bear hide and skull from Alaska to Washington.

26. In 2001, after the close of the bear hunting seasons, VEYS paid JAIRELL a fee for the services JAIRELL provided to the hunting clients JAIRELL guided out of the Pybus Point Lodge that year.

27. VEYS did not file a Transporter Activity Report with the State of Alaska at any time for the year 2001.

All of which is contrary to and in violation of Title 18, United States Code, Sections 371 and 2.

## COUNT 2

### LACEY ACT - ILLEGAL WILDLIFE TRAFFICKING
### Vio. 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B), 18 U.S.C. § 2

On or about June 7, 2001, in the State and District of Alaska and elsewhere,

ALAN J. VEYS and JAMES E. JAIRELL knowingly engaged in conduct involving the

sale, offer to sell and intent to sell wildlife, having a market value in excess of $350, to

wit: 2 black bears (Ursus americanus), by knowingly transporting said wildlife in

interstate commerce from Alaska to Utah, knowing said wildlife was sold in violation of,

and in a manner unlawful under, Alaska state law and regulation, specifically AS

08.54.720(a)(3),(9),(11),(14).

All in violation of Title 16, United States Code, Sections 3372(a)(2)(A),

3373(d)(1)(B), and Title 18, United States Code, Section 2.

## COUNT 3

### LACEY ACT - ILLEGAL WILDLIFE TRAFFICKING
### Vio. 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B), 18 U.S.C. § 2

On or about and between June 7, 2001 and June 21, 2001, in the State and District

of Alaska and elsewhere, ALAN J. VEYS and JAMES E. JAIRELL knowingly engaged

in conduct involving the sale, offer to sell and intent to sell wildlife, having a market

value in excess of $350, to wit: 2 black bears (Ursus americanus), by knowingly

transporting said wildlife in interstate commerce from Alaska to Georgia, knowing said

wildlife was sold in violation of, and in a manner unlawful under, Alaska state law and

17

regulation, specifically AS 08.54.720(a)(3),(9),(11),(14).

All in violation of Title 16, United States Code, Sections 3372(a)(2)(A),

3373(d)(1)(B), and Title 18, United States Code, Section 2.


## COUNT 4

### LACEY ACT - ILLEGAL WILDLIFE TRAFFICKING
Vio. 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B), 18 U.S.C. § 2

On or about September 26, 2001, in the State and District of Alaska and

elsewhere, ALAN J. VEYS and JAMES E. JAIRELL knowingly engaged in conduct

involving the sale, offer to sell, and intent to sell wildlife, having a market value in

excess of $350, to wit: 3 black bears (Ursus americanus), by knowingly transporting said

wildlife in interstate commerce from Alaska to Utah, knowing said wildlife was sold in

violation of, and in a manner unlawful under, Alaska state law and regulation,

specifically AS 08.54.720(a)(3),(9),(11),(14).

All in violation of Title 16, United States Code, Sections 3372(a)(2)(A),

3373(d)(1)(B), and Title 18, United States Code, Section 2.


## COUNT 5

### LACEY ACT - ILLEGAL WILDLIFE TRAFFICKING
Vio. 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B), 18 U.S.C. § 2

On or about September 26, 2001, in the State and District of Alaska and

elsewhere, ALAN J. VEYS and  JAMES E. JAIRELL knowingly engaged in conduct

18

involving the sale, offer to sell, and intent to sell, wildlife having a market value in

excess of $350, to wit: 1 black bear (Ursus americanus), by knowingly transporting said

wildlife in interstate commerce from Alaska to Washington, knowing said wildlife was

sold in violation of, and in a manner unlawful under, Alaska state law and regulation,

specifically AS 08.54.720(a)(3),(9),(11),(14).

All in violation of Title 16, United States Code, Sections 3372(a)(2)(A),

3373(d)(1)(B), and Title 18, United States Code, Section 2.


## COUNTS 6-13

### LACEY ACT - FALSE LABELING
### Vio. 16 U.S.C. §§ 3372(d), 3373(d)(3)(A)(ii), 18 U.S.C. § 2

On or about each date listed below, in the State and District of Alaska and

elsewhere JAMES JAIRELL knowingly made and submitted a false record and account

for wildlife having a market value in excess of $350, to wit, a black bear (Ursus

americanus), which the defendant sold and transported in interstate commerce, by

making and submitting, or causing to be made and submitted, to the State of Alaska, a

bear sealing certificate which falsely reported that the bear described on the form was

killed during a non-guided hunt.

| Count | Certificate Date | Certificate Number |
|-------|------------------|--------------------|
| 6 | June 7, 2001 | A 02325 |
| 7 | June 7, 2001 | A 02329 |

19

| 8  | June 7, 2001       | A 02328 |
| 9  | June 21, 2001      | A 01907 |
| 10 | September 26, 2001 | 121545  |
| 11 | September 26, 2001 | 121548  |
| 12 | September 26, 2001 | 121549  |
| 13 | September 26, 2001 | 121550  |

All in violation of Title 16, United States Code, Sections 3372(d),

3373(d)(3)(A)(ii), Title 18 United States Code, Section 2.

## COUNT 14

Lacey Act Forfeiture
16 U.S.C. § 3374(a)(2)

Upon conviction of Count Four or Five, the 27-foot Koffler boat bearing Alaska

Department of Fish and Game number 68500, and its engines and attached equipment,

are forfeitable to the United States pursuant to 16 U.S.C. § 3374(a)(2), which provides in

relevant part that vessels and equipment used to aid in the transporting or selling of

wildlife in a criminal violation of this chapter for which a felony conviction is obtained

shall be subject to forfeiture to the United States if (A) the owner of such vessel, vehicle,

aircraft or equipment was at the time of the alleged illegal act a consenting party or privy

thereto or in the exercise of due care should have known that such vessel, vehicle,

aircraft or equipment would be used in a criminal violation of the Lacey Act, and (B) the

20

violation involved the sale, the offer of sale, or the intent to sell or purchase wildlife.

A TRUE BILL.

s/ Grand Jury Foreperson
GRAND JURY FOREPERSON

s/ Robert S. Anderson
ROBERT S. ANDERSON
Senior Trial Attorney
Environment and Natural Resources Division
United States Department of Justice
Phone: (406) 829-3322
Fax: (406) 542-1476
Email: robert.anderson8@usdoj.gov

s/ Robert S. Anderson, for
STEVEN E. SKROCKI
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov

s/ James A. Goeke (for)
DEBORAH M. SMITH
Acting United States Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: deb.smith@usdoj.gov

DATED: ___7/19/06_____

21