Kevin T. Fitzgerald, Esquire
ABA No. 8711085
Ingaldson, Maassen &
Fitzgerald, P.C.
813 West Third Avenue
Anchorage, Alaska 99501
(907) 258-8750
(907) 258-8751/Facsimile
E-mail: kevin@impc-law.com

Attorneys for Defendant Jairell

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 1:06-cr-00003-HRH |
| | ) | |
| | ) | **SENTENCING MEMORANDUM** |
| JAMES E. JAIRELL, | ) | |
| Defendant. | ) | |

## I.    INTRODUCTION

COMES NOW Defendant, James Jairell, by and through counsel of record, Ingaldson, Maassen, Fitzgerald, P.C., and hereby submits his sentencing memorandum to aid the Court in Mr. Jairell's sentencing, scheduled for July 11, 2007.

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

## II.   BACKGROUND

In approximately 1998, Jim Jairell decided that he wanted to work and live in Alaska. This followed a series of medical events which made Jairell's prior work as an electrician in Wyoming difficult. Jairell's decision met with the full support of his wife of nearly 20 years, Vicki, who recognized in her husband a love of the wilderness and a passion for hunting. The plan was for Jairell to transition to Alaska while Vicki maintained the couple's home in Wyoming. When, and if, Jairell was able to establish a guiding business, it was expected that Vicki would join him in Alaska. Unfortunately, this transition was delayed by still more medical problems when Jairell suffered a stroke. Even so, Jairell was determined to make Alaska his residence and guiding his second career. To that end, Jairell developed a relationship with Alan Veys, who owned a lodge within Pilot's Bay, on Admiralty Island. Early on, Jairell sometimes stayed at Veys' lodge. Later, Jairell purchased a floating boathouse from which he could service clients.

In 1999, Jairell received an assistant guide's license. Between 1999 and 2001, Jairell assisted numerous guides on both brown bear and black bear hunts, as well as

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Jairell
No. 1:06-cr-00003-HRH
Sentencing Memorandum

goat hunts. In April 2000, Jairell applied for a Class-A assistant guide license which would allow him to be alone in the field overnight with clients. Various errors were made in filling out the application, later prompting a plethora of State charges. Most of these charges were later dismissed.[1]

To support his lodge, Veys typically attended various sports shows in the winter. Veys began booking combination fishing and hunting trips. The typical price for these combination hunts was $4,000.00, with $1,500.00 to be paid to Veys for the hunting portion. Jairell did not attend most of these sports shows where the combination hunts were booked by Veys.

Sadly, Jairell did not learn of many of these hunts booked by Veys until shortly before, or even after, the clients arrived at Veys' lodge. Veys would then attempt to get a guide to cover the hunt portion of the trip. If unsuccessful, Veys would expect Jairell to serve

---

[1] The gravamen of the State's charges were that Jairell was not yet a resident of Alaska for purposes of hunting and fishing. A "resident" is typically one who has the present intent to make Alaska his residence. However, for purposes of hunting, the Alaska regulations require a one-year abstinence from competing claims of residency. The regulations do not, however, require, as suggested by the State, that a person must actually physically reside in Alaska 365 consecutive days before claiming Alaska residency.

USA v. Jairell
No. 1:06-cr-00003-HRH
Sentencing Memorandum

INGALDSON, MAASSEN & FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

as a guide. Sometimes Jairell was able to get a guide to cover the hunt; sometimes he was unsuccessful. Later, Veys paid Jairell for his services. Jairell's 1099 from Veys for 2001, reflects that Jairell was paid $10,000.00 in 2001, $4,000.00 of it representing fees paid for legal goat hunts. Accordingly, Jairell was paid for the equivalent of four black bear hunts in 2001.

### III. ISSUES

A. <u>Specific Offense Characteristic 2Q2.1((b)(3)</u>.

The Government has calculated that between 2000 - 2001 nine black bears were taken illegally.[2] Regardless of whether the number of bears is nine or ten, the correct market value of wildlife for purposes of determining the sentencing guidelines for Jairell appears to be a two-level increase. This same result is reached by employing a variety of alternative methods for calculating market value pursuant to U.S.S.G. §2Q2.1.

The application notes to § 2Q2.1 explain what to do when market value is difficult to ascertain. Application Note 4 provides:

> When information is reasonably available, "market value" under subsection b(3)(A)

---

[2] The presentence writer calculates ten black bears. At this time, Jairell is unaware of evidence which would support this calculation.

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Jairell
No. 1:06-cr-00003-HRH
Sentencing Memorandum

shall be based on the fair market retail price. Where the fair market retail price is difficult to ascertain, the court may make a reasonable estimate using any reliable information such as the reasonable replacement or restitution costs or the acquisition and preservation (<u>e.g.</u> taxidermy) cost.

Given that the hunt component of the trip is readily distinguishable from the lodge/fishing component, compensation received appears to be an appropriate method of calculating fair market value.

B.  <u>Fair Market Price</u>.

There is no real dispute that Veys charged clients $1,500 for the hunting portion of their trips.[3] It is equally clear that Jairell only received compensation of $6,000 for all of the 2001 hunts. Even if Jairell received compensation of $3,000 for the 2000 hunts, this would be less than the $10,000 threshold for a four-level increase. <u>See</u>, U.S.S.G § 2B1.1(b)(1)(b). Using "compensation" as a method of calculating market value makes additional sense since "compensation" is critical for determining what activities were illegal.

"Guide" means to provide, <u>for compensation</u>, or with the intent or with an agreement to receive

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

---

[3]   This would lead to an increase of no more than 4 levels under § 2B1.1.

USA v. Jairell
No. 1:06-cr-00003-HRH
Sentencing Memorandum

compensation, services, equipment, or facilities to a big game hunter in the field by a person who accompanies or is with the big game hunter in the field, either personally through an assistant. A.S. 08.54.790(7). As noted above, most of the hunts at issue were unilaterally booked by Veys without Jairell's knowledge or participation. Jairell only learned about most of these hunts at the last moment. The hunters paid Veys, not Jairell. It was not until the end of the year that Jairell received compensation from Veys. As noted, the amount actually received by Jairell from Veys in 2001 was $6,000 for the black bear hunts. There is simply no legal prohibition against an assistant providing services that would otherwise qualify as a guided hunt unless the assistant receives "compensation." Here, the evidence supports the view that Jairell received less than $10,000 in "compensation," even of one considers the 2000 hunts. It would therefore appear, pursuant to U.S.S.G §2Q2.1(b)(3) and § 2B1.1, that Jairell would be subject to a market value increase of no more than two levels. The same result is reached if one uses restitution as the method for calculating the market value increase.

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Jairell
No. 1:06-cr-00003-HRH
Sentencing Memorandum

C.  Restitution.

Application Note 4 specifically notes that restitution cost is a good indicator of fair market value when fair market value is difficult to ascertain. Alaska has statutorily set the restitution amount for an illegally killed black bear at $600.00. See A.S. 16.05.925(b)(1). Indeed, the Government itself has used this restitution value in establishing restitution in the instant matter.

The presentence writer would appear to agree, in part, with this analysis. It is known that for Veys' sentencing, the presentence writer has calculated a market value increase of only four levels. This calculation is based on the determination that the hunt component is readily distinguishable from the lodging and fishing component. Indeed, the only difference in the calculations provided by the presentence writer is that she has calculated ten bears at $1,500 apiece, without considering the points raised above.[4]

---

[4]  Apparently, the only reason the presentence writer calculated a six-level increase for Jairell was based upon the parties' plea agreement and "estimate" in the instant matter. However, the agreement and estimate made by Jairell and the government does not extinguish this Court's obligation to determine the appropriate guideline range as a matter of law. It necessarily follows that the market value increase in the instant matter should be no more than four levels.

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Jairell
No. 1:06-cr-00003-HRH
Sentencing Memorandum

The significance of this analysis is that it would serve to reduce Jairell's guideline calculation range from a final adjusted sentencing range from a Level 12 to a Level 10, if not 8. A total offense level of 8 falls within Zone A, and a guideline range of 0-6 months.

### IV. 18 U.S.C. § 3553(A) SENTENCING FACTORS

Given that the guidelines are now advisory, the following sentencing factors under 18 U.S.C. § 3553(A) apply: (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, afford deterrence, protect the public from further crimes, and provide the defendant training and treatment; (3) the kinds of sentences available; (4) the established guideline sentencing ranges; (5) any pertinent guidelines policy statements; (6) the need to avoid unwarranted sentence disparity between defendants with similar records convicted of similar crimes; and (7) the need to provide restitution to victims of the offense.

A. <u>Nature and circumstances of offense and the history and characteristics of the defendant</u>.

Jairell agrees that the nature and circumstances of the offense and his history support imposition of a modest fine, restitution amount, and a short period of

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Jairell
No. 1:06-cr-00003-HRH
Sentencing Memorandum

confinement. The letters that accompany this Sentencing Memorandum speak volumes regarding Mr. Jairell's character. See, Exhibit 1, letters from Bill Papola, Richard Samuel, and George and Janice Parker. What this information reflects is that Jairell genuinely cares for people, including those who are disadvantaged.[5] In fact, a good deal of Jairell's problems with the law appear to have resulted from his desire to help people, sometimes in a fashion not consistent with the technical requirements of the law.

Unfortunately, Mr. Jairell has also faced increasingly serious challenges to his health. See Exhibit 2, letters from Dr. Carlson and Dr. Southwell. Some of these challenges appear to have resulted from stress related to the instant matter. See, Exhibit 1. Given the circumstances, the government has agreed to allow Mr. Jairell to self-report. Some care will need to be taken by FBOP to identify a facility that can meet Mr. Jairell's current health issues.

---

[5] Jairell also plans to submit a letter from James Lakeman of Safari Make a Wish regarding Jairell's selfless work with terminally ill children.

USA v. Jairell
No. 1:06-cr-00003-HRH
Sentencing Memorandum

Page 9 of 12

INGALDSON, MAASSEN & FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

B.  Need for deterrence and rehabilitation.

A sentence of even minimal confinement, when coupled with the other consequences of Mr. Jairell's plea, more than amply serves the goals of deterrence and rehabilitation. In addition to the fine and restitution, Mr. Jairell will be on supervised release, as well as suffer the opprobrium of being a felon. This, of course, not only significantly affects Jairell, but his family.

C.  Sentencing ranges available/Sentencing disparity.

The sentence agreed upon between the parties in the plea agreement was predicated on a market value increase of six levels. Even so, counsel understood that there was a legal issue concerning the determination of the market value increase. Undersigned understood that the government would agree with a market value calculation which was consistent with the applicable law. See Exhibit 3. The presentence writer has determined that the market value increase should be, at most, four levels. Jairell has articulated reasons why that increase should be no more than two levels. Even with a reduction to four levels, however, Jairell would hope that the government would change its sentencing recommendation, given that it was based upon the parties' incorrect preliminary estimate of

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Jairell
No. 1:06-cr-00003-HRH
Sentencing Memorandum

the market value increase. Otherwise, the agreed-upon jail term for Jairell is based upon an incorrect market value determination and serves to create a sentence disparity with Mr. Veys.

D. Restitution.

The parties agreed to restitution in the amount of $5,400.00. The parties have further agreed that that restitution should be joint and several, with Mr. Veys.

V.  OTHER SENTENCING ISSUES

One of the special conditions of probation is that Jairell not hunt, fish, trap, or guide anywhere in the world, or accompany anyone hunting, fishing, trapping, or guiding. In fashioning this condition, the parties understood the goal was to prohibit Jairell from providing hunting, fishing, or guiding services. However, at the time of the plea, the parties were aware that Mr. Jairell had, and hoped to continue, to film the salvage of animals for the purposes of providing educational and training videos. See, Exhibit 3. The government has agreed that Jairell can address this issue with the court at the time of sentencing.

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Jairell
No. 1:06-cr-00003-HRH
Sentencing Memorandum

Dated at Anchorage, Alaska July 6, 2007.

INGALDSON, MAASSEN &
FITZGERALD, P.C.
Attorneys for Defendant


s/Kevin T. Fitzgerald
ABA No. 8711085
813 West Third Avenue
Anchorage, AK  99501
Fax: (907) 258-8751
E-mail: kevin@impc-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 207,,
a copy of the foregoing Sentencing Memorandum
was served electronically on:

Robert S. Anderson, Senior Trial Attorney
Steven Skrocki, AUSA
Wayne D. Hettenbach, Trial Attorney

 s/Kevin T. Fitzgerald
F:\W\3079-1\Pleadings\Sentencing Memorandum.doc

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Jairell
No. 1:06-cr-00003-HRH
Sentencing Memorandum